IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STATE AUTO PROPERTY & | ) | |
| CASUALTY INSURANCE CO. | ) | Civil Action No. 2:11-cv-00457 |
| | ) | Judge Cathy Bissoon/ |
| Plaintiff, | ) | Magistrate Judge Cynthia Reed Eddy |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FRANK LAGROTTA, SYLVAN | ) | |
| HEIGHTS REALTY PARTNERS, | ) | |
| LLC, and AMERICARE MANAGEMENT | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

Relying on diversity, Plaintiff, State Auto Property & Casualty ("State Auto" or

("Plaintiff") filed this Declaratory Judgment Action against Frank LaGrotta ("LaGrotta"), Sylvan

Heights Realty Partners, LLC ("Sylvan"), and Americare Management Services, Inc.

("Americare") (the last two, collectively, "state court Plaintiffs"). State Auto asks the Court to

determine that it does not have a duty to defend or indemnify its insured, LaGrotta,[1] in a suit

---

[1]     In his Answer to State Auto's Complaint, LaGrotta includes a Counterclaim, which is, in
effect, a request that if State Auto is found not have a a duty to defend or indemnify him in the
underlying suit, the doctrine of estoppel be applied to impose these duties upon State Auto.
LaGrotta asks that the Court "enter judgment in his favor or, alternatively, . . . order that the
subject policy of insurance be reformed in accordance with his reasonable expectations of
coverage at the time this policy of insurance was purchased." [ECF No. 4 at 12-13].

brought in the Court of Common Pleas for Lawrence County.[2] In this Declaratory Judgment Action, Cross Motions for Summary Judgment are pending. [ECF Nos. 29, 31]. This Court respectfully recommends that summary judgment be granted in favor of State Auto, and that the Motion for Summary Judgment filed by LaGrotta be denied. Also pending is the state Plaintiffs' Motion [ECF No. 36] to Dismiss State Auto's Summary Judgment Motion on the ground that State Auto failed to file with its Motion a Concise Statement of Material Facts as required by this District Court's Local Rule, LcvR 56 B.1. While this Court does not condone flouting mandatory rules or allowing counsel to decide, without consulting the Court, that the circumstances of the case excuse compliance, the state court Plaintiffs' Motion to Dismiss should be denied.

## II.  REPORT

### Background

During the period extending from September 10, 2002 to September 10, 2003, LaGrotta served as a member of the Pennsylvania House of Representatives representing the Tenth House District of Pennsylvania. In his official capacity as State Representative, LaGrotta held a State Auto Business Owner's Common Policy ("Policy") which provided coverage for damages flowing from "occurrences" of "bodily injury, property damage, and personal or advertising injury...." [ECF No.1 at ¶¶ 36, 39,¶36; ECF No. 1-2;]

LaGrotta's District contained a nursing home, Hill View Manor ("Hill View"), operated by Lawrence County ("the County"). [ECF No.1 at ¶8]. In October 2002, the County took steps to privatize Hill View due to the high cost of operating the obsolescent facility. [Id. at ¶¶ 9-10].

---

[2] The state case is captioned Sylvan Heights Realty Partners, L.L.C. and Americare Mgmt. Serv., Inc. v. LaGrotta, No. 10844-05.

Shortly thereafter, Sylvan offered to purchase Hill View and an adjoining parcel of land, and the parties entered into an Agreement of Sale. [Id. at ¶10; Doc. 31-1 at ¶¶ 6, 10]. Pending the sale, Hill View's original management company gave notice to the County that it would not continue to manage the facility. [ECF No. 1 at ¶11; ECF No. 31-1 at ¶25]. As a result, the County entered into an interim Management Agreement with Americare in which Americare agreed to manage Hill View under the terms of the previous contract until the sale was finalized. [ECF No. 1 ¶ 11; ECF No. 31-1 at ¶ 25]. The sale, though, was never consummated, and, as a result, the County reneged on its agreement with Americare. [ECF No. 31-1 at ¶¶ 48, 62, 68].

In December 2005, LaGrotta was named in the matter filed in the Court of Common Pleas of Lawrence County, Pennsylvania ("the state action"). The three count Amended Complaint in that case is based on events surrounding the aborted sale of Hill View in 2002-2003 when LaGrotta was insured by State Auto. In Counts I and III, LaGrotta is alleged to have engaged in tortious interference with contract and in Count II, to have committed tortious interference with prospective contractual relations.

Specifically, LaGrotta is said to have acted intentionally "outside the scope of his jurisdiction and duties as a state legislator" to induce agents and officials of the County to breach its Sales Agreement with Sylvan. [ECF No. 31-1 at ¶¶ 31, 45]. According to the Amended Complaint, LaGrotta accomplished this by issuing two press releases from his office, stating maliciously and with intent to harm Sylvan that he had contacted the Pennsylvania Department of Health, advising them of "apparently improper associations between the principals of Sylvan and those of Americare ..." regarding a "questionable transfer of funds." [ECF No. 1 at ¶¶13, 16; ECF No. 31-1 at ¶¶ 32, 36, 37]. State Plaintiffs also contend that LaGrotta acted outside the scope of his jurisdiction and duties as state legislator when he informed the Pennsylvania State

3

Police Commissioner that the proposed Hill View sale was entangled with organized crime and should be investigated. [ECF No. 1 at ¶ 15; ECF No. 31-1 at ¶¶ 36-37]. State Plaintiffs allege that as a result of LaGrotta's actions, the Department of Health rescinded its prior approval of the Hill View sale, [ECF No. 1 at ¶ 14; ECF No. 31-1 at ¶ 33], Sylvan was unable to obtain financing, [ECF No. 1 at ¶ 16; ECF 31-1 at ¶ 36-37], and the County breached its Management Agreement by terminating Americare as the interim manager of Hill View. [Id.].

During the first years of the state litigation is unclear who was representing LaGrotta; he let the State Auto Policy lapse in 2005. Due to what he describes as "initial confusion," LaGrotta, in apparent contravention of the Policy, failed to provide State Auto with notice of the state court action until January 2008. [ECF No. 33-1 at 2]. After State Auto learned of the state litigation from LaGrotta's personal attorney, it responded promptly by sending a notice of receipt on February 1, 2008. Despite the three year delay, State Auto tendered a defense to LaGrotta. [Doc. 31-6 at 4]. It did so, however, reserving its right to deny coverage for events having taken place during the 2002-2003 policy period. The letter noted the allegations in the state complaint that LaGrotta's allegedly illegal acts "acts [fell] outside the scope of his jurisdiction and duties as a state legislator," and advised that "if these allegations are true there may not be any coverage of the claims made by the plaintiffs in [the state] lawsuit." [Id. at 5]. Last, the letter stated that the underlying claims for tortious interference with present or future contractual relationships were not covered under the policy because they were "legal theories clearly requiring a specific intent to cause harm." [Id. at 6]. Thus, they were barred under the Policy's exclusion of intentional harm caused by personal and advertising injury. Id.

4

In April 2011, State Auto filed this action seeking a determination of its duty to defend and indemnify LaGrotta in the state litigation. [ECF No. 1 at ¶ 41]. ³ State Auto argues that though the underlying claims fall within the general coverage available under the State Auto policy for "Personal and Advertising Injury," the allegations describe intentional conduct on LaGrotta's part and are thus excluded from coverage. [Id. at ¶ 41-57] State Auto also contends that that because, under governing law, the duty to defend is broader than the duty to indemnify, LaGrotta has no right to indemnification. [ECF No. 1 at ¶ 58-64].

LaGrotta responds that although the state Plaintiffs allege intentional conduct, the Amended Complaint also contains allegations of recklessness. Because the exclusion relating to intentional conduct does not necessarily apply, LaGrotta contends that State Auto has a duty to defend *and* indemnify him. [ECF No. 29 at ¶ 10, 12-13]. LaGrotta also argues that State Auto should be estopped from denying coverage because he will be severely prejudiced in trying to defend the state court action, given the number of years that have passed since the events at issue. [Id. at ¶¶ 21-22]. In order to have these issues of coverage resolved, the parties have filed the pending Motions.

## Standard of Review

Summary Judgment is appropriate only where there are no genuine issues of material fact. Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the

---

³ In May 2011, State Auto filed an Amended Complaint [ECF No.5] noting that the underlying state complaint asked, in the ad damnum clause of each Count, that it Plaintiffs be awarded punitive damages. State Auto requested that its original complaint for declaratory relief be amended where appropriate to read that "Punitive damages are not covered under the State Auto Policy and are not insurable under the law of the Commonwealth of Pennsylvania." [See, e.g., Id. ¶ 3].

moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586-87 (emphasis in original removed).

In evaluating the evidence, the Court must view the facts and the inferences to be drawn therefrom in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. At the summary judgment stage, the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. When examining the record to see if there are genuine issues of material fact, the Court's focus is on issue finding, not on issue resolution.

## Discussion

1. Principles of Policy Interpretation

Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time of contract formation is controlling. "Such intent is to be inferred from the written provisions of the contract." Penn–America Ins. Co. v. Peccadillos, Inc., 27 A.3d 259, 264 (Pa.Super. 2011) (quoting Am. and Foreign Ins. Co. v. Jerry's Sport Ctr, Inc., 2 A.3d 526, 540 (Pa. 2010)). When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, . . . which will be given its commonly accepted and plain meaning[.]" LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647 (Pa. 2009) (citations omitted).

The United States Court of Appeals for the Third Circuit has articulated similar principles governing contract interpretation:

6

> It is the function of the court to interpret insurance
> contracts under Pennsylvania law. The court's primary
> consideration in performing this function is to ascertain the
> intent of the parties as manifested by the language of the
> written instrument. The policy must be read as a whole and
> construed in accordance with the plain meaning of terms.
> Words of common usage must be construed in their natural,
> plain and ordinary sense, with a court free to consult a
> dictionary to inform its understanding of terms.

Am. Auto. Ins. Co. v. Murray, 658 F.3d 311, 320-321 (3d Cir. 2011) (internal citations and quotations omitted). The rules for determining coverage are straightforward. The burden of establishing coverage rests with the insured. ACE Cap. Ltd. v. Morgan Waldon Ins. Mgmt., LLC, Civil Action No. 11-128, 2011 WL 5914275, at *11 (W.D. Pa. Nov. 28, 2011) (quoting Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206-07 (3d Cir. 2001)). "It is the insurer, however, that bears the burden of establishing the applicability of an exclusion in an insurance contract." Id. Exclusions are strictly construed in favor of the insured and against the insurer. Id.

To determine whether an insured has met its burden of establishing coverage, the factual allegations of the underlying complaint must be examined. "An insurer's duty to defend an action against the insured is measured, in the first instance by the allegations in the plaintiffs' pleadings." Gene's Rest. Inc. v. Nationwide Ins. Co., 548 A.2d 246 (Pa. 1988). "[T]he language of the policy and the allegations of the complaint must be construed together to determine the insurer's obligation. 7C J. Appleman, Insurance Law and Practice § 4683, at 42, 50 (W. Berdel ed. 1979) (footnotes omitted). See also Cadwallader v. New Amsterdam Cas. Co., 152 A.2d 484 (Pa. 1959); 14A G. Couch, Insurance § 51:44, at 458-69 (M. Rhodes 2d rev. ed. 1982); 1A H. Long, The Law of Liability Insurance § 5.02, at 5-19 to -39, § 5.04, at 5-41 to -42 (1987)." Id. at 246-47. If the complaint's factual allegations "encompass an injury that is *actually or potentially* within the scope of the policy [,]" the insurer has an obligation to defend. ACE Cap. Ltd. 2011

7

WL 5914275 at *12 (citing Erie Ins. Exch.v. TransAmerica Ins. Co., 533 A.2d 1363, 1368) (Pa. 1987)) (emphasis supplied) (observing that allegations in complaint might or might not fall within the policy's coverage). Thus, if the underlying complaint alleges a cause of action that may potentially come within the policy's scope of coverage, the insurer's duty to defend attaches. Erie Ins. Exch., 553 A.2d at 1368. "[I]t is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend." ACE Cap. Ltd., 2011 WL 5914275 at *12.

"Pennsylvania's courts have taken a relatively broad view in discerning whether a complaint triggers an insurer's duty to defend." Berg Chilling Sys., Inc. v. Vicarb, Inc., No. 02-2241, 2003 WL 21658276 at * 624 (3d Cir. July 11, 2003). The United States Court of Appeals for the Third Circuit has also explained that "[t]he proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured. That expectation is governed by the unambiguous language of the insurance policy." Essex Ins. Co. v. Starlight Mgmt. Co., No. 05-3135, 2006 WL 2786871 at *3 (3d Cir. Sept. 27, 2006) (internal citations and quotation marks omitted).

The Pennsylvania Supreme Court has stated that the factual allegations of the underlying complaint "are to be taken as true and liberally construed in favor of the insured." Am. & Foreign Ins. Co., 2 A.3d at 541 (internal citations and quotations omitted). The duty to defend "is not limited to meritorious actions; it even extends to actions that are groundless, false, or fraudulent as long as there exists the possibility that the allegations implicate coverage." Id. Insurance companies often "face a difficult decision as to whether a claim falls, or potentially falls, within the scope of the insurance policy." Id. at 542. Where uncertainty exists, the insurer

8

"should provide a defense and seek declaratory judgment" to determine whether the duty to defend exists. Id.

The insurer's duty to defend and its duty to indemnify an insured are not coextensive; the duty to defend is broader than the duty to indemnify. Thus, the absence of a duty to defend "also preclude[s] a duty to indemnify." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 n. 7 (Pa. 2006). Although the law stretches to give the insured the benefit of every doubt as to coverage, where an insurer seeks declaratory relief regarding its duty to indemnify, a court should refrain from addressing that issue until the insured has been found liable for damages in the underlying suit. Cincinnati Ins. Co. v. Pestco, Inc., 374 F.Supp.2d 451, 465 (W.D. Pa. 2004). See also ACE Cap. Ltd., 2011 WL 5914275 at *13. These principles can be distilled to the following: If State Auto has a duty to defend LaGrotta, the issue of indemnification will be deferred until the state litigation is resolved. If, however, the Court finds that State Auto is not under a duty to defend, it is correspondingly relieved of the duty to indemnify.

2. Portions of the State Auto Policy Bearing on the Obligation to Defend LaGrotta

With these principles of interpretation in mind, the Court makes the required comparison between the Policy and the state court Amended Complaint. Because it is undisputed that the events underlying this litigation did not give rise to bodily injury or property damage, the Court focuses on the section of the Policy dealing with "Personal and Advertising Injury." The Liability and Medical Expenses Definition of the Policy defines an "advertisement" as a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters." [ECF No. 45 at 9].

9

Section A(1)(b)(2) of the Business Owners Liability Coverage Form establishes that the Policy applies "[t]o 'personal and advertising injury' caused by an offense arising out of your business but only if the offence was committed in the 'coverage territory' during the policy period." (EFC No. 31-3 at 13). The term "personal and advertising injury" is defined in the Policy, in relevant part, as follows:

14. [I]njury, including consequential "bodily injury" arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution . . .

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . .

[ECF No. 31-3 at 24].

Also relevant to the issue of coverage is the Policy's exclusion of "personal and advertising injury" that was "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury,'" or "(2) [arose from] oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." [Id. at 18].

Under Pennsylvania law, "the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact; the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy." Britamco Underwriters, Inc. v. Weiner, 636 A.2d 649, 651 (Pa. Super. 1994) (citing Gedeon v. State Farm Mut. Auto Co., 188 A.2d 320, 321 (Pa. 1963)). "[I]t does not matter if in reality the facts are completely groundless, false or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend." Aetna

10

Cas. and Sur. Co. v. Roe, 650 A.2d 94, 99 (Pa. Super. 1994) (citing D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. 1986)).

Having reviewed the relevant Policy provisions, the Court returns to the allegations set out in the state court Amended Complaint. At the end of July 2003, LaGrotta is alleged to have contacted Susan Papa, an attorney in private practice in Lawrence County who was the sister of Lawrence County Controller, Mary Ann Reiter. [ECF No. 1-2 at ¶ 30]. At about the same time, Reiter, "after having raised questions about Sylvan's and Americare's use of private pay funds in the course of interim management of Hill View, filed for a Preliminary Injunction against Sylvan and the County Commissioners." [Id. at ¶ 22]. She sought to have Sylvan's accounts frozen, demanded an accounting, and asked for control over the payment accounts. [Id.].

The sale of Hill View was to have taken place on July 1, 2003. At the closing, Sylvan was informed by the acting solicitor for the County of allegations that provisions of the Agreement of Sale which provided that the County would guarantee financing were illegal, and that the County would not agree to any closing based on its guarantee of financing on behalf of Sylvan. [Id.].

After LaGrotta spoke with Papa, he allegedly "discussed the . . . sale of Hill View to Sylvan with County officials, inducing them to breach the agreement with Sylvan. [Id. at ¶31.] In addition, two press releases originating from LaGrotta's Office and disseminated to the public, stated that "LaGrotta [had] contacted the Pennsylvania Department of Health . . . and complained of . . . 'apparently improper associations between the principals of Sylvan Heights and those of Americare . . .'" [Id. at ¶ 32]. According to one of the press releases, "[a]s a result of . . . LaGrotta's phone call, the then acting Secretary of Health . . . faxed a letter to [a] Hill View administrator, . . . notifying the [C]ounty that the [D]epartment [of Health] was 'rescinding

11

[its] June 30, 2003 letter approving the change of ownership from Lawrence County to Sylvan . . .'" [Id. at ¶33].

Sylvan and Americare also allege that LaGrotta, acting outside the scope of his jurisdiction and duties as a state legislator, requested that the Pennsylvania State Police Commissioner investigate the transaction between Sylvan and Hill View because, according to information communicated to LaGrotta by an unidentified third party, Sylvan and Americare principals, the Lawrence County Commissioner, and the Lawrence County District Attorney were involved in organized crime. [Id. at ¶ 35]. According to Sylvan and Americare, as a result of LaGrotta's phone call and "the negative publicity created by his press releases, Sylvan was unable to . . . obtain financing for the purchase of Hill View, and lost more $25,000 in anticipated profits" [Id. at ¶¶ 36, 49].

Plaintiffs in the state suit allege in Count I, titled "Tortious Interference with Contract" that "[a]s a direct proximate and intended result of Defendant LaGrotta's actions, Lawrence County did not sell Hill View . . . ." and that "[the] actions undertaken by Defendant LaGrotta were, outrageous, done willfully and maliciously, without justification or excuse, and were undertaken with intent to harm Plaintiff Sylvan." [Id. at ¶ 50]. In Count II, titled "Tortious Interference with Prospective Contractual Relations, the state Plaintiffs allege that LaGrotta "contacted representatives of the County and the Department, and caused the issuance of the Press Releases in an effort and with the intent to convince them to withdraw their approval of the prospective sale of Hill View to Sylvan . . . ." [Id. at ¶ 56]. They also contend that LaGrotta contacted County government officials and local media outlets with intent to cause or induce the County to refrain from selling Hill View to Sylvan. [Id. at ¶ 57]. The state Plaintiffs reiterate that "[t]he actions undertaken by Defendant LaGrotta were outrageous, were done willfully and

12

maliciously, without legal justification or excuse, and were undertaken with intent to harm Sylvan." [Id. at ¶ 63]. In Count III, titled "Tortious Interference With Contract," Americare sets out allegations involving Hill View that are virtually identical to those made on behalf of Sylvan in Court I. [Id. at ¶¶ 64- 75].

3. Analysis of LaGrotta's Motion for Summary Judgment [ECF No. 29]

LaGrotta bases his claim to coverage on the ground that while the state Complaint alleges that he committed intentional torts, two paragraphs included in each Count of that Complaint allege that LaGrotta was negligent:

> 46. Before contacting Lawrence County officials and the Department, and issuing the Press Releases, LaGrotta did not investigate the truthfulness or accuracy of the allegations purportedly relayed to him by Susan Papa . . . regarding "the possibility of funds being transferred from the private-pay residents' fund" or the claimed "apparently improper associations between the principals of Sylvan Heights and those of Americare, Inc."
>
> 47. Defendant LaGrotta's actions were unprivileged, improper, and reckless.

LaGrotta's contends that these allegations of negligence entitle him to coverage under the Policy. This argument lacks merit. It is the *facts* alleged in the underlying complaint, not the cause of action pled, that determine coverage. Donegal Mut. Ins. Co. v. Baumhammers, 893 A.2d 797, 811 (Pa. Super. 2006) aff'd in part and rev'd in part on other grounds, 938 A.2d 286 (2007). The Court should not inquire into or resolve factual disputes to determine whether an insurer's duty to defend has been triggered; all evidence is limited to the "language of the complaint against the insured." Kvaerner Metals, 908 A.2d at 896.

The allegations in the state Complaint support each of the three tortious interference claims. The elements of . . . [a] tortious interference with contract claim (Counts I and III) are:

13

(1) the existence of a contractual relationship; (2) LaGrotta's intent to harm Sylvan by interfering with its contractual relations; (3) the impropriety of the interference; and (4) harm resulting from LaGrotta's conduct." InterVest, Inc. v. Blomberg, L.P., 340 F.3d 144, 168 n. 10 (3d Cir. 2003) (citing Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 663 (3d Cir. 1993)). The elements of a claim for interference with prospective contractual relations (Count II) are virtually identical:

> (1) the existence of a contractual or prospective contractual relation between the complainant and a third party;
>
> (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual legal damage as a result of the defendant's . . . conduct.

Pelagatti v. Cohen, 536 A.2d 1337, 1343 (Pa. Super. 1987).

"[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead, as the Court has noted, it is necessary to look at the factual allegations contained in the complaint." Mut. Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999) (citing Scopel v. Donegal Mut. Ins. Co., 698 A.2d 602 (Pa. Super. 1997); Aetna Cas. and Sur. Co. v. Roe, 650 A.2d 94, 98 (Pa.1994)). "[T]o allow the manner in which the complainant frames the request for redress to control in a case such as this one would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability policies." Id. at 745.

In its recent decision in Colony Ins. Co. v. Mid-Atlantic Youth Serv. Corp., Nos. 10-2882, 10-4780, 10-2833, 10-4198, 2012 WL 2354435 at *1 (3d Cir. June 21, 2012), the United

14

States Court of Appeals for the Third Circuit rejected an argument nearly identical to the one made here by LaGrotta. Recognizing that "[i]f there is one claim that falls within the policy, the insurer must defend the entire action," two Defendants in a declaratory judgment action contended that although the underlying complaint alleged intentional acts that were not subject to coverage, "the complaint also included allegations of negligence, triggering coverage under the policies." Id. at * 1-2. The Court wrote:

> Although they point to language in the complaints that defendants "unlawfully, and/or recklessly, willfully, wantonly and/or in a manner that shocks the conscience and/or with deliberate and/or reckless indifference . . ." to demonstrate allegations of negligence, we look at the factual allegations and not the particular cause of action that is pled in determining whether coverage is triggered. The factual allegations in the complaints recite that [defendants] "knowingly and willfully entered into an agreement . . ." participated in the racketeering acts by "devising . . . to defraud by means of wire communication . . ." and "intentionally conspired and agreed to acquire to maintain interests in and control of the enterprise . . ."

Id. at *2 (internal citations omitted).

For purposes of the negligence allegations set out in the state court against LaGrotta, the analysis is identical to the one undertaken in Colony Insurance. Inserting a negligence claim in a Complaint without supporting allegations did not alter the scope of insurance coverage where the remainder of the Complaint alleged specific facts sufficient to state a tortious interference with contract claim. "It must be emphasized that the tort (interference with contractual relation) is an intentional one: the actor is acting as he does for the purpose of causing harm to the plaintiff; negligent action that interferes with another's ability to contract is not enough." Degiovanni Sharp v. Whitman Council, Inc., No. 05-CV-4297, 2006 WL 2261623 at *13 (E.D. Aug. 3, 2006) (citations omitted). Perhaps most important is the fact that claims for negligent interference with contractual relations are "not cognizable under Pennsylvania law." Id. See also

15

<u>Valley Forge Convention & Visitors Bureau v. Visitor's Serv., Inc.</u>, 28 F. Supp. 2d 947, 952 (E.D. Pa. 1998) ("There is no general cause of action in Pennsylvania for negligent interference with contractual relations.")

The intentional nature of the conduct alleged in the state Amended Complaint has additional implications for LaGrotta's argument that he is covered by the Policy. Those allegations set out in the Amended Complaint describe intentional acts that do not fall within the definition of an "occurrence." The Policy's definition of "occurrence" is "an accident including continuing or repeated exposure to substantially the same general harmful conditions." [ECF 31-3 at ¶ F(4)]

The case law defines an "occurrence" in much the same way. "[T]he Pennsylvania Supreme Court in <u>Kvaerner Metals</u>, has cautioned against looking beyond the underlying complaint and being overly inclusive in defining an "occurrence"; words in a policy should be used in their normal context and in their natural, plain and normal sense." <u>Erie Ins. Exch. v. Maier</u>, 963 A.2d 907, 909 (Pa. Super. 2008) (citing <u>Kvaerner Metals</u>, 908 A.2d at 898)) "An occurrence has been defined by our Supreme Court as an 'accident.' <u>Id.</u> An accident is "something that occurs unexpectedly or intentionally." <u>Id.</u> Thus, an occurrence is generally an unintended event. Viewing an occurrence this way is reasonable in most circumstances and supports the conclusion that intentional acts are not occurrences.

The Policy at issue in LaGrotta's case provides that "personal and advertising injury" encompasses consequential "bodily injury" arising out of one or more of the following offenses: a) false imprisonment; b) malicious prosecution; c) wrongful eviction; d) oral or written publication of material that slanders of libels a person or organization or disparages a person's or organization's goods, products, or services; e) oral or written publication of material that violates

16

a person's right of privacy; f) use of another's advertising idea in your "advertisement"; or g) upon another's copyright, trade dress or slogan in your advertisement. B (1)(p)(1,2,4). [ECF No. 1-5 at 18]. The Policy defines "bodily injury" as one caused by an *occurrence* that takes place in the coverage territory during the policy period. A (1)(b)(1)(a). [ECF No. 1-5 at 13].

As the Court of Appeals for the Third Circuit stated:

> An act is accidental if premised on the negligent acts of the insured. [T]he complaints do not contain allegations that [the insureds] committed negligent acts, only intentional acts. From the perspective of the insured, the acts cannot be seen as accidental because they were deliberate . . . . Accordingly, there was no "occurrence" that triggered [the insurance companies'] right to defend.

Colony Ins. Co., 2012 WL 2354435 at *3.

Finally, the exclusions section of the Policy, [ECF No. 31-3, Section B(1)(p) (1)], entitled Personal and Advertising Injury, makes clear that the Policy does not apply to "Personal and Advertising Injury" of the type alleged here. Part B of the Policy contains an exclusion providing that the Policy does not cover damages "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury." The allegations against LaGrotta in the state proceedings fall well within the parameters of the exclusionary language.

The Amended Complaint alleges that press releases formulated and disseminated by LaGrotta were intended to "induce" or "convince" the Pennsylvania Department of Health to rescind its approval for the Hill View sale, and to dissuade the County from consummating the sale to Sylvan, thereby eliminating the need for an Interim Management Agreement with Americare. [See ECF 1 at ¶¶ 45, 56-57, 66-67]. The Amended Complaint expressly alleges that LaGrotta issued these press releases "with the intent to harm" Sylvan and Americare, and that

17

these entities suffered "direct, proximate and intended" damage as a result. [Id.] Whether LaGrotta did, in fact, have actual knowledge is irrelevant. Because the Plaintiffs allege that LaGrotta knowingly violated their rights, the State Auto Policy "does not create a duty to defend the underlying suit." London v. PA Childcare, LLC, Civil Action No. 3:09-cv-2256, 2012 WL 92888423 at *5 (M.D. Pa. March 19, 2012). Because it has no duty to defend, State Auto is not required to indemnify LaGrotta should he be found liable for the actions alleged in the state court Complaint.

4. Coverage Based on Estoppel

Contrary to LaGrotta's contention, State Auto is not estopped from denying coverage to under the Policy. It is the law that an insurance company may not "assume the defense of a suit which entails relinquishing to the insurer the management of the case and then later deny liability under the policy," Cont'l Ins. Co. v. Kovach, 2007 WL 2343771, *8 (W.D.Pa. 2007) (citing Merch. Mut. Ins. Co. v. Artis, 907 F.Supp. 886, 890-91 (E.D.Pa. 1995)). An insurer may, however, protect its right to assume and later disavow coverage "by a timely reservation of rights which fairly informs the insured of the insurer's position." Artis, 907 F.Supp. at 890-91; Aetna Life and Cas. Co. v. McCabe, 556 F.Supp. 1342 (E.D.Pa. 1983) (notice was neither timely nor adequate where insurer attempted to disclaim coverage three days prior to trial and the reservation of rights letter did not reserve the right to disclaim intentional conduct); Scottsdale Ins. Co. v. City of Hazleton, No. 09-4176, 2010 WL 4375911 (3d Cir. Nov. 5, 2010) (finding that three-month delay of insurer's issuing a reservation of rights letter was timely in a bad faith claim against insurer).

Where an insured seeks to estop an insurer from disclaiming the obligation to defend a suit, "the burden rests on the party asserting an estoppel to establish the defense by clear, precise,

18

and unequivocal evidence." Artis, 907 F.Supp. at 890-91 (citing Mendel v. Home Ins. Co., 806 F.Supp. 1206, 1215 (E.D.Pa. 1992)). In order to invoke the estoppel doctrine successfully, the insured must establish that the insurer represented facts that caused the purported insured to believe that he had coverage and rely to his detriment on that belief." Id. at 891. The assessment of detrimental reliance "on an insurer's conduct requires an analysis of the facts relating to whether the party asserting estoppel has been prejudiced by the conduct of the insurer." Id. Consequently, only where the insurer's conduct has caused actual prejudice may courts apply the principle of estoppel.

Here, LaGrotta's argument that he detrimentally relied on State Auto's coverage and suffered prejudice as a result lacks merit. Days after receiving LaGrotta's initial notice of claim, State Auto extended coverage accompanied by a reservation of rights in a letter sent to LaGrotta's personal attorney. In the letter, State Auto contended that LaGrotta had acted outside the scope of his jurisdiction and duties as a legislator as alleged in the underlying state suit, and that the claims against him would likely be excluded from coverage under the Policy because the complaint alleged that LaGrotta had acted intentionally in inflicting advertising injury upon the Plaintiff. State Auto could hardly have acted more promptly in extending coverage given the extremely late notice of claim made by LaGrotta, and LaGrotta has not identified any insufficiency in the letter outlining State Auto's reservation of rights. Consequently, LaGrotta has failed to establish by clear, precise and unequivocal evidence that he was prejudiced in any way by the actions of State Auto. His attempt to invoke the doctrine of estoppel as a means to force State Auto to continue coverage is, therefore, fatally flawed.

5. The Motion to Dismiss Filed by Sylvan and Americare

In a Minute Entry dated April 3, 2012, the Court set an April 25, 2012 due date for Motions for Summary Judgment, with Responses to be filed no later than May 23, 2012. Although their Cross Motions and Responses were timely, neither LaGrotta nor State Auto filed the Concise Statement of Material Facts or the Responsive Statement required by LcvR 56. State Auto's failure was not noted until May 23, when the state Plaintiffs filed the Motion to Dismiss. (Stating for the first time that they could not respond to what was not attached to State Auto's Motion, Sylvan and Americare neglected to file a Responsive Concise Statement of Material Fact required by LcvR 56 C.1.)

In response to the state court Plaintiffs' Motion to Dismiss, [ECF No. 40 at ¶ 6], State Auto explained that only four documents were at issue in the Declaratory Judgment Action, *none of which was disputed*, and that each document had been included twice in its filings. These documents – the State Auto Policy, the underlying state Amended Complaint, LaGrotta's letter to State Auto requesting coverage, and State Auto's letter extending coverage with a reservation of rights - were attached to the Declaratory Judgment Complaint [ECF No. 1] and to State Auto's Motion for Summary Judgment [ECF No. 31]. Neither Sylvan nor Americare had challenged the contents of these documents. State Auto wrote, "As such, it is believed and therefore averred that it was not necessary or appropriate to file a separate concise statement of material facts . . . ." [ECF No. 40 at ¶11].

When, in an abundance of caution after the state Plaintiffs' Motion to Dismiss, State Auto moved to file a four paragraph Concise Statement, the Court granted the Motion without requiring a response. [ECF No. 42; Order dated June 6, 2012]. LaGrotta did not object. Sylvan and Americare, though, complained that the Court's action "shortened the time for [them] to

20

respond . . . from 30 to 14 Days [sic]." [ECF No. 44 at ¶7]. Nonetheless, Sylvan and Americare were able to file a response within six days. [ECF No. 44]. In the response, they argued that pursuant to Fed R. Civ. P. 6 "the Court lack[ed] authority or discretion to grant State Auto's Motion . . . to file an untimely Concise Statement absent a finding of excusable neglect." [Id. at 9]. Because, they say, the Court failed to address excusable neglect, its only option [was] to dismiss or strike State Auto's Motion for Summary Judgment. [Id.]. The Court finds that State Auto, by pointing out that the four relevant documents and the facts set out therein were not in dispute, did, though not explicitly, articulate a credible case of excusable neglect. Moreover, Local Rule Lcv56 provides that the penalty for noncompliance with its filing requirements is the admission of the facts as stated by the compliant party. Because there is no disagreement over any of the facts underlying this case, applying the relevant penalty changes nothing.

In their own Concise Statement of Facts filed June 14, 2012, Americare and Sylvan do not offer any substantive challenge to the Amended Complaint or to the State Auto Policy. As to the letter claiming coverage sent to State Auto by LaGrotta, the state court Plaintiffs attempt to create a dispute by stating that "there is no reference to the party to whom the letter was allegedly directed," and that Sylvan and Americare . . . have no knowledge as to the authenticity or accuracy of the reference document. They state the same with respect to State Auto's tender ,of coverage. [ECF No. 45 at ¶¶ 3, 4]. At the same time, they do not deny that Lagrotta requested coverage, and that State Auto tendered it under the conditions stated. In other words, they fail to provide any ground whatever to suggest that the documents are anything but what they purport to be; each of the documents speaks for itself.

The situation presented here is very like that faced by the Court in Houser v. Alcoa, Inc., Long Term Disability Plan, Civil Action No. 10-160, 2010 WL 5058310 at *1 (W.D. Pa. Dec. 6,

21

2010). There, the Plaintiff failed to file a response to Defendant's concise statement of material facts, instead setting forth her own version of events. The Court, adopting a practical approach to the Rule violation wrote:

> After reviewing the submissions, . . . I find that . . . the material facts appear to be undisputed . . . The parties do not dispute the contents of the administrative record and I cite to it where appropriate. . . [A]lthough Plaintiff's failure to follow the local rule is inexcusable, I will not automatically deem Defendant's facts admitted or require Plaintiff to file a corrected responsive statement of material facts at this late stage.

Id. at *1 n.1. For the reasons articulated in the pending case, the Court is finds that the pragmatic approach taken in Alcoa should be taken here, as well. The state court Plaintiffs' Motion to Dismiss State Auto's Motion for Summary Judgment should be denied.

## III. CONCLUSION

For the reasons set out above, it is respectfully recommended that the Motion for Summary Judgment filed in this Declaratory Judgment action by LaGrotta [ECF No. 29] be denied, and that the Motion for Summary Judgment filed on behalf of State Auto [ECF No. 31] be granted. It is further recommended that the Motion to Dismiss filed by Sylvan and Americare [filed with ECF No. 36, Response in Opposition to 32 Brief in Support of Motion, 31 Motion for Summary Judgment] be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, Objections to this Report and Recommendation are to be filed no later than August 28, 2012. Failure to file timely Objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Respectfully submitted,

CYNTHIA REED EDDY
United States Magistrate Judge

Dated: August 14, 2012

cc:     Counsel of Record via CM-ECF